IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ACCIDENT INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION  15-0306-WS-B |
| | ) |
| GREG KENNEDY BUILDER, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion to dismiss or stay.  (Doc. 34).  The parties have filed briefs in support of their respective positions, and the motion is ripe for resolution.  After careful consideration, the Court concludes that the motion to dismiss is due to be denied and that the motion to stay is due to be granted in part and denied in part.

## BACKGROUND

The plaintiff filed this action under the Declaratory Judgments Act ("the Act") against its insured ("Kennedy") and the plaintiff in the underlying lawsuit ("Benitez"), which was filed against Kennedy and others.  The original complaint sought a declaration that the plaintiff has no duty to indemnify Kennedy.  (Doc. 1 at 9).  The complaint did not seek a declaration as to the plaintiff's duty to defend.

The defendants filed a motion to dismiss, arguing that the indemnification issue is not ripe and that the Court thus should dismiss the action or at least stay it pending resolution of the underlying lawsuit.  (Doc. 14).  The plaintiff promptly amended its complaint, as of right, to add a request for a declaration that the plaintiff has no duty to defend Kennedy in the underlying litigation.  (Doc. 16 at 10).  The Magistrate Judge thereafter ruled that the amended pleading rendered

moot the motion to dismiss or stay.  (Doc. 18).  A second motion to dismiss or stay followed, (Doc. 20), but the Court denied it as moot after the plaintiff had filed a second amended complaint and the defendants had filed the instant motion to dismiss or stay.  (Doc. 35).

The defendants argue that the Court lacks jurisdiction but that, even if jurisdiction exists, the Court should exercise its discretion to dismiss the action without consideration.

## DISCUSSION

"In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  To be "within [the] jurisdiction" of the Court, there must exist an independent fount of jurisdiction.  *Appling County v. Municipal Electric Authority*, 621 F.2d 1301, 1303 (5th Cir. 1980).  Here, as the Court has previously ruled, (Doc. 32), that fount is diversity of citizenship.

The statutory "actual controversy" requirement mirrors the constitutional "case or controversy" requirement of Article III, section 2.  *Provident Life & Accident Insurance Co. v. Transamerica-Occidental Life Insurance Co.*, 850 F.2d 1489, 1491 (11th Cir. 1988).  In the statutory context, that requirement looks to "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *GTE Directories Publishing Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Even when an "actual controversy" exists that falls "within [the] jurisdiction" of the district court, the plaintiff has no absolute right to a federal

forum.  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  The Act "confer[s] unique and substantial discretion in deciding whether to declare the rights of litigants," and the district court's decision whether to exercise jurisdiction is reviewable on appeal only for abuse of that discretion.  *Id.* at 286, 290.

### A.  Actual Controversy.

As noted, the original complaint sought a declaration only as to indemnity.  The defendants string three concepts together in an effort to show that the original complaint fatally failed to invoke the Court's jurisdiction:  (1) ripeness goes to a court's subject matter jurisdiction; (2) any question as to indemnity is unripe before the insured is cast in judgment; and (3) subject matter jurisdiction must exist when the complaint is filed, such that its initial absence cannot be cured by subsequent events.  (Doc. 34 at 8-12; Doc. 38 at 1-5).

Each of these concepts finds case support.  As to the first, "[t]he determination of ripeness goes to whether the district court had subject matter jurisdiction to hear the case."  *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997) (internal quotes omitted); *see also Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006) ("[R]ipeness originate[s] from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies.").

As to the defendants' second premise, this Court has observed that "[c]ase law is legion for the proposition that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action."  *Pennsylvania National Mutual Casualty Insurance Co. v. King*, 2012 WL 280656 at *5 (S.D. Ala. 2012).  Thus, a plaintiff "cannot dispute

that the duty-to-indemnify issue joined in this action is not yet ripe because there has been no liability determination in the underlying suit." *Id*.[1]

And as to the defendants' third premise, "[s]ubject matter jurisdiction is ordinarily tested as of the time of filing the complaint." *Damiano v. F.D.I.C.*, 104 F.3d 328, 333 (11th Cir. 1997).

Based on these principles, the defendants conclude that, by limiting its original complaint to the existence *vel non* of a duty to indemnify, the plaintiff failed to assert a ripe controversy, which failure deprives the Court of jurisdiction, the absence of which cannot be cured by the amended complaint's expansion of the lawsuit to challenge the plaintiff's duty to defend.

The defendants' argument is not unreasonable, but it fails to capture the entire landscape.  In an opinion the defendants cite but do not address in pertinent part, this Court examined the relevant authorities[2] and concluded, in a case involving only the duty to indemnify, that "the complaint presents an 'actual controversy' under the Act despite the absence of a verdict or settlement against the plaintiff's insureds." *Employers Mutual Casualty Co. v. All Seasons Window & Door Manufacturing, Inc*., 387 F. Supp. 2d 1205, 1210 (S.D. Ala. 2005).

Since the defendants do not acknowledge *All Seasons*, the Court is not inclined to revisit it *sua sponte*, but the Court does pause to suggest that the existence of an actual controversy despite a lack of ripeness is not as incongruous as it might appear.  "Ripeness" as a doctrine has two components – a jurisdictional

---

[1] The Court has frequently repeated this observation.  *E.g., Pennsylvania National Mutual Casualty Insurance Co. v. Roberts Brothers, Inc.*, 550 F. Supp. 2d 1295, 1302-03 (S.D. Ala. 2008); *Apex/FCC, LLC v. FlexiCrew Staffing, Inc*., 2012 WL 5398803 at *2-3 (S.D. Ala. 2012); *W.G. Yates & Sons Construction Co. v. Zurich American Insurance Co*., 2008 WL 161921 at *6 (S.D. Ala. 2008); *Atlantic Casualty Insurance Co. v. GMC Concrete Co*., 2007 WL 4335499 at *5 (S.D. Ala. 2007).

[2] These included *Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270 (1941); *Edwards v. Sharkey*, 747 F.2d 684 (11th Cir. 1984); *Allstate Insurance Co. v. Employers Liability Assurance Corp*., 445 F.2d 1278 (5th Cir. 1971); *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co*., 280 F.2d 453 (5th Cir. 1960), and appellate cases from other circuits.

4

one arising out of the constitutional "case or controversy" requirement, and a prudential one arising independently of Article III.  *E.g., National Advertising Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005).  There is thus nothing inherently inconsistent between saying a claim is not ripe from a prudential standpoint and saying it presents an actual controversy for purposes of the Act and the Constitution.[3]

     Nor does the absence of ripeness when an action is filed necessarily require dismissal regardless of later events.  In *Yacht Club Condominium Association, Inc. v. Lexington Insurance Co*., 509 Fed. Appx. 919 (11th Cir. 2013), the plaintiff insured sued its primary insurer for breach of contract before the insurer had denied the plaintiff's claim.  The Eleventh Circuit ruled that, although the contract claim was not "ripe at the time the lawsuit was filed, … this conclusion does not end the Court's inquiry, because ripeness can be affected by events occurring after the case is filed."  *Id*. at 922.  Since the insurer denied the claim before the trial court dismissed the action, "the district court erred in concluding that these claims were not ripe and dismissing the case."  *Id*. at 923.  On a second appeal, the Eleventh Circuit confirmed that the prior panel "determined that while the suit was not ripe at the time it was filed, subsequent events [denial of the insured's claim] made [the plaintiff's] breach of contract claim ripe for review."  *Yacht Club Condominium Association, Inc. v. Lexington Insurance Co*., 599 Fed. Appx. 875, 878 (11th Cir. 2015).

     The *Yacht Club* Court relied on *Blanchette v. Connecticut General Insurance Corp*., 419 U.S. 102 (1974), and on *Henley v. Herring*, 779 F.2d 1553

---

     [3] Opinions addressing the ripeness of claims seeking a declaration that no indemnity obligation exists generally do not specify whether it is the constitutional or the prudential aspect of ripeness being considered; thus, it cannot be assumed that they rest on the former.  Indeed, in many instances the term may be used loosely to describe concerns other than those the formal doctrine addresses.  Moreover, judicial discussions of ripeness often become entangled with considerations regarding the appropriate exercise of discretion under the Act, further indicating that constitutional concerns are not at issue.

(11th Cir. 1986). In *Blanchette*, the trial court had ruled one issue "premature" for resolution. 419 U.S. at 118. The Supreme Court noted that a subsequent "change in circumstance has substantially altered the posture of the case as regards the maturity of" this issue. *Id*. at 139-40. "And, since ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern." *Id*. at 140. Thus, the Supreme Court found the issue "now ripe for adjudication." *Id*. at 145.

In *Henley*, the plaintiffs challenged the defendants' efforts to vacate a public street. 779 F.2d at 1554. The defendant city asserted the claim was not ripe because, when suit was filed, it had not formally approved the vacation, nor had an interested landowner ("UAB") made the necessary court filings to accomplish vacation. "Subsequently, however, and before the date of the judgment, UAB made the necessary filings and the City did formally approve the vacation. Since ripeness is 'peculiarly a question of timing' these intervening events are significant … [and] [t]he case was ripe when the district court ruled." *Id*. at 1555 (quoting *Blanchette*, 419 U.S. at 140).

Both *Blanchette* and *Henley* concluded that a case initially unripe had become ripe in sufficient time to uphold the "basic rationale" of ripeness, which is "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agricultural Products Co*., 473 U.S. 568, 580 (1985) (internal quotes omitted). So here, the plaintiff's filing of an amended complaint implicating its duty to defend, barely two months after the case was filed and before anything of substance had occurred, cured any initial unripeness.[4]

---

[4] The defendants argue there is no ripe issue concerning a duty to defend, on the grounds that the plaintiff is in fact providing a defense. (Doc. 38 at 2-3). But the plaintiff asserts – without contradiction by the defendants – that it is defending "pursuant to a strict reservation of rights" and that it "retained the right to withdraw the defense." (Doc. 37 at 5). The defendants have not explained (and the Court cannot) their odd

In short, there is an actual controversy, and this action is not subject to dismissal for want of one.

**B. Discretion.**

**1. Duty to defend.**

As noted, the Court has discretion not to exercise its jurisdiction under the Act. The defendants suggest this as the appropriate course, on the grounds that a declaration of no duty to defend "could improperly and prejudicially influence the proceedings in the underlying action." (Doc. 34 at 13). As the defendants see it, a critical issue in the underlying action is whether Benitez was an employee of Kennedy, an independent contractor, or a trespasser. According to the defendants, if Benitez was a trespasser, two results flow: (1) Kennedy owed Benitez no duty; and (2) the policy exclusion on which the plaintiff relies would not apply. If, on the other hand, Benitez was an employee or independent contractor, two opposite results flow: (1) Kennedy owed Benitez a duty; and (2) the policy exclusion is in play. (*Id*. at 13, 18, 20; Doc. 38 at 6). Because Benitez's status is central both to Kennedy's liability and the plaintiff's duty to defend, the defendants worry that the issue could be resolved differently in the two jurisdictions. (Doc. 34 at 13). Worse, they fear that a ruling favorable to the plaintiff on the duty to defend could be used against Kennedy in the underlying action as evidence (or perhaps as a

---

position that an insurer with the power and the desire to cease providing a defense fails to present an actual controversy when it seeks a declaration that it owes no duty to defend.

"This Court has previously held that the duty to defend a suit against the insured is a present obligation existing during the pendency of the suit, such that a dispute concerning defense obligations presents a ripe controversy." *White-Spunner Construction, Inc. v. Zurich American Insurance Co*., 2010 WL 3489956 at *1 (S.D. Ala. 2010). The defendants concede that the duty-to-defend aspect of this case "may be ripe." (Doc. 34 at 17). Accordingly, as in *White-Spunner*, the Court "follows the path it has trod before" and finds the issue ripe. 2010 WL 3489956 at *1.

preclusive finding) that Benitez was not a trespasser and that Kennedy thus owed him a duty of care.  (*Id*. at 13-14).

The overt premise of the defendants' argument is that the Court, in resolving the plaintiff's duty to defend, will make a definitive ruling as to whether Benitez was or was not a trespasser.  But the very case on which the defendants rely acknowledges that "'[a]n insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured.'"  *National Trust Insurance Co. v. Magnolia Enterprises, Inc*., 2012 WL 38441 at *4 (S.D. Ala. 2012) (quoting *Ajdarodini v. State Auto Mutual Insurance Co.*, 628 So. 2d 312, 313 (Ala. 1993)).  That is, it is not the "real" facts that matter when assessing the duty to defend, but the facts alleged in the complaint.  *E.g., King*, 2012 WL 280656 at *3 n.5.[5]

The defendants cite *National Trust* for the proposition that the Court "may … consider facts which may be proved by admissible evidence," (Doc. 34 at 13-14), but they fail to note that such evidence is admissible only for the purpose of "deciding *whether the complaint alleges*" something within the policy's coverage.  2012 WL 38441 at *4 (emphasis added).  The case on which Judge DuBose relied for this proposition confirms the limitation.  *Pacific Indemnity Co. v. Run-A Ford Co*., 161 So. 2d 789, 795 (Ala. 1964) ("We are of the opinion that in deciding *whether a complaint alleges* such injury [as is covered by the policy], the court is not limited to the bare allegations of the complaint in the action against the insured but may also look to facts which may be proved by admissible evidence in a suit for declaratory relief ….") (emphasis added).  Thus, while the Court perhaps can consider evidence beyond the underlying complaint in assessing what that pleading *alleges* as to Benitez's status, it cannot make a definitive ruling as to

---

[5] The plaintiff agrees that "the existence of the duty [to defend] is determined by the policy and the allegations of the complaint …."  (Doc. 37 at 6 (internal quotes omitted)).

what his status was *in fact*. The defendants' fear otherwise furnishes no grounds for the Court to decline its jurisdiction under the Act.

The Eleventh Circuit has developed a list of "factors for consideration to aid district courts in balancing state and federal interests" when making a "discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts." *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328, 1331 (11ᵗʰ Cir. 2005) (internal quotes omitted). The defendants admit there is "no parallel state action," (Doc. 34 at 15, 17), but they still urge the Court to apply the *Ameritas* factors here. The Court retains the skepticism it has long expressed concerning the applicability of *Ameritas* absent a parallel state proceeding,[6] and it hews to its position that, "[a]t a minimum …, the absence of parallel proceedings is a substantial factor bearing on the *Wilton/Brillhart* analysis." *Essex Insurance Co. v. Foley*, 2011 WL 290423 at *2 (S.D. Ala. 2011). As in *Foley*, "[e]ven if the *Ameritas* analysis were fully applicable in the absence of parallel litigation in state court, the Court is of the opinion that a stay is unwarranted here." *Id*. at *3.

There are nine *Ameritas* factors. 411 F.3d at 1331. The defendants rely on the second, third, fourth, seventh and eighth of them. (Doc. 34 at 17-20).[7] As this

---

[6] *King*, 2012 WL 280656 at *4 ("As an initial matter, considerable precedent supports the notion that a *Wilton/Brillhart* analysis does not even apply in the absence of parallel litigation."); *GMC Concrete*, 2007 WL 4335499 at *3 ("It could be convincingly argued that a *Wilton/Ameritas* analysis has no place in this case because there are no parallel proceedings."); *Travelers Casualty and Surety Co. of America, Inc. v. East Beach Development, LLC*, 2007 WL 3407049 at *12 (S.D. Ala. 2007) ("In the absence of parallel state-court proceedings, *Wilton/Brillhart* abstention is inappropriate on its face.").

[7] These factors are:

> (2) whether the judgment in the federal declaratory action would settle the controversy;
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" – that is, to provide an arena for a race

Court ruled in a similar situation, the seventh and eighth *Ameritas* factors "only favor abstention when both the state and federal courts are asked to decide the same legal or factual issues." *Atlantic Casualty Insurance Co. v. GMC Concrete Co.*, 2007 WL 4335499 at *3 (S.D. Ala. 2007). As discussed above, while the underlying litigation must decide whether Benitez was in fact a trespasser, resolution of the duty to defend in this action will not encompass any such ultimate determination of Benitez's actual status; nor will the underlying litigation resolve whether the complaint therein makes allegations falling within the policy's coverage.

The third factor "unquestionably favor[s] allowing this case to proceed[, since] [i]t cannot be reasonably be disputed that declaration of insurance coverage issues would clarify the parties' legal relations." *GMC Concrete*, 2007 WL 4335499 at *3. And the second factor is at best neutral because, since the issues are not joined in both actions, "the coverage and liability issues will inevitably have to be resolved in two different actions, regardless of whether the Court exercises jurisdiction or not." *Id.* at *4.

Which means the defendants must cast all on "procedural fencing." It seems unlikely that this single *Ameritas* factor could justify declining to exercise jurisdiction to decide the plaintiff's duty to defend, but in any event the defendants' showing is unequal to the task. For starters, the defendants cannot even muster an allegation that the plaintiff has actually engaged in procedural fencing; instead, they assert only that "[a] declaratory remedy *could be* used" by the plaintiff for procedural fencing. (Doc. 34 at 18 (emphasis added)).

---

for res judicata or to achieve a federal hearing in a case otherwise not removable;
        …
        (7) whether the underlying factual issues are important to an informed resolution of the case; [and]
        (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court ….

411 F.3d at 1331.

The defendants' argument is disjointed and not entirely cohesive but seems to make the following points.  First, the plaintiff waited nine months before filing this action, and did so only a week after accepting defense of the underlying lawsuit under a reservation of rights.  This sequence "[a]rguably" suggests the plaintiff sought to "avoid becoming a third-party defendant in the underlying action" (had Kennedy filed a third-party complaint regarding coverage in the underlying action), which third-party action would have constituted a parallel proceeding and thus exposed this action to a full *Ameritas* analysis.  (Doc. 34 at 16).

Second, Kennedy could still file a third-party complaint, and might do so if the plaintiff withdraws its defense.  According to the defendants, the filing of such a pleading, even after the filing of a federal declaratory judgment action by the plaintiff, often results in dismissal of the federal proceeding under an *Ameritas* analysis.  But, should the plaintiff prevail in this action and Kennedy thereafter file a third-party complaint, the plaintiff would gain "procedural advantages" in the form of having had a federal court decide state insurance law issues.  (Doc. 34 at 19).

Third, "[b]y undertaking to provide a defense first and then filing a declaratory judgment action, Plaintiff precludes [Kennedy] from filing a 'parallel state action' seeking a declaration of its rights ...."  (Doc. 38 at 3 n.1).

The short answer to the defendants' arguments is that they ignore the test of procedural fencing – a race for res judicata or to gain a federal hearing in a case not otherwise removable.  *Ameritas*, 411 F.3d at 1331.  Since, as discussed above, the state action will not resolve what the complaint does or does not allege about Benitez's status and will not decide whether the plaintiff has a duty to defend, it is difficult to see how a race for res judicata is underway.  And since the plaintiff is not a party to the state proceedings, it is difficult to see how the "removab[ility]" *vel non* of the state action to federal court could be relevant.

Nor do the defendants' indicia of procedural fencing hold up well to examination. In the first place, the assertion in their reply brief that the filing of this action "precludes" Kennedy from filing a third-party complaint is flatly contradicted by the assertion in their principal brief Kennedy remains entitled to file a third-party complaint but chooses not to do so as long as the plaintiff provides a defense. But even if the defendants are right about the preclusion, it is not a result of any sneaky conduct by the plaintiff. By the defendants' own statement of the facts, the plaintiff withheld a defense for almost nine months before providing one under a reservation of rights while, almost simultaneously, filing this action. (Doc. 34 at 3-5). Kennedy fumes over being yanked around by the plaintiff before it finally offered a defense, so it cannot seriously suggest the plaintiff impeded its ability, or chilled its desire, to file a third-party complaint at some point during that nine-month period. And if the mere fact that a state-law issue is decided by a federal court could demonstrate procedural fencing, such fencing would exist in every single *Ameritas* case – a result plainly at odds with the *Ameritas* framework.

In short, nothing presented by the defendants persuades the Court that it should decline to exercise its jurisdiction over the plaintiff's request for a declaration that it has no duty to defend Kennedy in the underlying lawsuit.

### 2.  Duty to indemnify.

"It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insured's liability to the movants." *All Seasons*, 387 F. Supp. 2d at 1211-12. Neither side seriously disagrees with this assessment, but they do disagree about whether the appropriate response is to dismiss the indemnity aspect of the case or to stay it.

The defendants note that the Court has previously opted for dismissal rather than a stay. (Doc. 34 at 14). "In those cases, however, no issue of a duty to

defend remained, and the Court declined to retain a case with no ripe aspects."
*White-Spunner Construction, Inc. v. Zurich American Insurance Co.*, 2010 WL
3489956 at *2 n.3 (S.D. Ala. 2010).[8]  When, as here, the action includes a ripe
request for a declaration as to the duty to defend, the Court has consistently stayed
an accompanying, unripe request for a declaration as to the duty to indemnify.  *Id*.
at *2; *Apex/FCC*, 2012 WL 5398803 at *3; *King*, 2012 WL 280656 at *5; *GMC
Concrete*, 2007 WL 4335499 at *5-6.  For the reasons stated in these cases, the
indemnity aspect of this action will be stayed "until the earlier of (i) a final
determination of the duty-to-defend issue herein; or (ii) a determination (or other
resolution) in the underlying action of whether [Kennedy] is liable to [Benitez]."
*Apex/FCC*, 2012 WL 5398803 at *3.


## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is
**denied**.  The defendants' motion to stay is **granted** with respect to the duty to
indemnify and **denied** with respect to the duty to defend.  The indemnity aspect of
this action is **stayed** until the earlier of a final determination of the duty-to-defend
issue herein or resolution in the state action of whether Kennedy is liable to
Benitez.


DONE and ORDERED this 29th day of January, 2016.


s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] The Court in *White-Spunner* was describing *Roberts Brothers*, *W.G. Yates*, and
*All Seasons*, but the same is true of other cases dismissed by the Court, in each of which
there were parallel state proceedings and the *Ameritas* analysis called for abstention
regarding the entire declaratory judgment action, leaving no duty-to-defend issue fit for
federal resolution.  *Lexington Insurance Co. v. Rolison*, 434 F. Supp. 2d 1228, 1243-44
(S.D. Ala. 2006); *East Beach Development*, 2007 WL 3407049 at *11; *Canal Insurance
Co. v. Morgan*, 2007 WL 174387 at * 4 (S.D. Ala. 2007).